IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ESTATE OF MICHELLE EVETTE :     CIVIL NUM 3:07cv508|MCR|EMT
McCALL, by and through co-personal :
representatives EDWARD M. McCALL, :
II, MARGARITA F. McCALL, and :
JASON WALLEY, :

         Plaintiff, :
         :
vs. :
         :
UNITED STATES OF AMERICA, :
         :
         Defendant. :



## COMPLAINT

Plaintiff, ESTATE OF MICHELLE EVETTE McCALL, by and through co-personal representatives EDWARD M. McCALL, II, MARGARITA F. McCALL, and JASON WALLEY, sues Defendant, the **UNITED STATES OF AMERICA**, and allege as follows:

### JURISDICTION AND VENUE

1.     This is an action brought under the Federal Tort Claims Act for a wrongful death arising out of the negligent and wrongful acts or omissions of employees, agents, apparent agents, servants

FLN3 – 1383 :   $350⁰⁰

or representatives of the United States Government while acting within the course and scope of their employment, agency, apparent agency, servitude, or representative capacity, under circumstances where the United States of America, if a private person, would be liable to the Plaintiffs under the laws of the State of Florida. 28 U.S.C. §1346(b). At all times relevant these persons were subject to the United States Government's right to control, including substantial supervision and direction over their day to day activities.

2.   Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §2671, *et seq.*

3.   On April 23, 2007, Plaintiff William Knightley Walley filed his administrative claim and on May 22, 2007, Plaintiffs Estate of Michelle Evette McCall, Edward McCall and Margarita McCall filed their administrative claims based on the facts alleged herein with the appropriate federal agency, the Department of Air Force, for damages arising out of the death of Michelle Evette McCall based on the negligence of United States Government employees, agents, apparent agents, servants or representatives, practicing in the course and scope of their

employment at the Fort Walton Beach Medical Center, where the 96th Medical Group had temporarily moved its inpatient obstetric and newborn nursery services due to construction at the Eglin Air Force Base Medical Treatment Facility. Copies of the administrative claims are attached hereto as **Composite Exhibit A**.

4. Such claims were presented as required by 28 U.S.C. §2675.

5. It has been more than six months since the original administrative claims were filed with the Department of the Air Force, which is the appropriate federal agency, as required by 28 U.S.C. §2675. The Department of the Air Force has failed to respond to the aforementioned administrative claims.

6. At all times material to this complaint, Plaintiffs were citizens of the United States of America, residing in Okaloosa County, Florida. Accordingly, venue is proper in the United States District Court for the Northern District of Florida pursuant to 28 U.S.C. 1402(b).

7. Michelle Evette McCall, was at all times material, a dependent of Air Force military personnel and entitled to Air Force medical care.

8.   Michelle Evette McCall, decedent, and Jason Walley were the natural parents and guardians of their minor child, William Knightley Walley. Edward M. McCall, II and Margarita F. McCall are the parents of Michelle Evette McCall, who was a minor at the time of her death.

9.   Upon the death of Michelle Evette McCall, Jason Walley was named biological father and sole parental authority of the minor child, William Knightley Walley. Copy of Final Judgment of Paternity attached hereto as **Exhibit B**.

10.   On February 5, 2007, Jason Walley, Edward M. McCall, II and Margarita F. McCall were appointed Co-Personal Representatives of the Estate of Michelle Evette McCall. Copy of Letters of Administration attached hereto as **Composite Exhibit C**.

11.   The beneficiaries of the Estate of Michelle Evette McCall are:

a)   William Knightley Walley, son of Michelle Evette McCall;

b)   Edward M. McCall, II, father of Michelle Evette McCall;

c)   Margarita F. McCall, mother of Michelle Evette

McCall.

12.    At all times material to this complaint,  the Fort Walton Beach
Medical Center, where the Department of the Air Force 96th
Medical Group had temporarily moved its inpatient obstetric
and newborn nursery services due to construction at the Eglin
Air Force Base Medical Treatment Facility, was functioning as
the Department of Air Force inpatient obstetric and newborn
nursery services unit of Eglin Air Force Base.  Department of
the Air Force qualified medical personnel, including physicians,
nurses, and technicians supporting inpatient obstetric and
newborn nursery services were relocated to Fort Walton Beach
Medical Center for treatment of the Department of the Air Force
patients.  The Department of the Air Force maintained
supervision of the personnel providing services to its patients at
the Fort Walton Beach Medical Center.

13.    At all material times hereto, Defendant United States of
America was the employer of certain health care providers,
including but not limited to all of the medical personnel and staff
who attended Michelle Evette McCall while she was in labor
with William Knightley Walley.

14. It is believed that all the physicians and nurses who attended to Michelle Evette McCall were agents, apparent agents, employees, servants or representatives of the United States of America, Department of the Air Force, acting within the course and scope of their agency, apparent agency, employment, servitude, or representative capacity.

## THE INCIDENT

15. On Thursday, February 16, 2006, Michelle Evette McCall (hereinafter "Michelle") went to the Eglin Air Force base clinic for a normal pre-natal check-up. Her blood pressure was high and she had a 6 pound weight gain from her previous visit. She was told to collect urine samples at home but not to bring them into the Eglin lab until Tuesday February 21, 2006 because Monday, February 20th was a federal holiday and the lab work would not get done until Tuesday, February 21, 2006.

16. On February 21, 2006, Michelle took the urine sample to the lab at Eglin. She was called later that afternoon by Air Force doctor Marvin H. Sineath, Jr., and told that she had pre-eclampsia and had to report to Fort Walton Beach Medical Center to be admitted for inducing the delivery of her baby.

17.   Michelle entered Fort Walton Beach Medical Center on
February 21, 2006 at approximately 5:00 p.m. She was given
Pitocin to induce labor. She labored through February 22, 2006.
At approximately 10:00 a.m. on February 22, 2006 a mid-wife
broke Michelle's water.  At approximately noon on February
22nd, Michelle had a lot of back pain and asked for an epidural.
At approximately 4:00 p.m. on February 22nd, the doctors
decided to take her off Pitocin and do a C-section.  At around
that same time, she was shaved and prepared for the C-
section.

18.   The doctors were concerned about Michelle's severe pre-
eclampsia.  However, the family was told at approximately 6:00
p.m. that the doctor who was going to do the C-section was out
at the base doing another procedure and that he would be
coming soon to Ft. Walton Beach Hospital which is about 10
miles away.  It is believed that this doctor was Dr. Archbald who
was consulted to do the C-section.  Dr. Crownover was also
consulted on Michelle's progress and pre-eclampsia.  The
doctor did not come for a long time and they put Michelle back
on Pitocin while they were waiting for the doctor.  The hospital

staff then told the family that they decided to wait for a natural birth. Late at night on the 22nd, morphine was administered to Michelle. A C-section was never done.

19.   Michelle delivered her son at 1:25 a.m. on February 23, by natural birth attended by Dr. Sineath. The baby weighed 8 lb., 13 oz. and was 21 inches long.

20.   The staff was unable to remove the placenta for 1 hour and 25 minutes.   This is far longer than the usual 2 to12 minutes after most deliveries. Dr. Crownover and Dr. Sineath both attempted to remove the placenta manually, but were unable to remove the placenta.

21.   Dr. Archbald then arrived and removed the placenta after 1 hour and 25 minutes and copious amounts of blood loss. While Michelle was bleeding to death, the doctors did not realize the amount of blood loss, or the significance, until it was too late.   Michelle lost so much blood, she needed an immediate transfusion.   Michelle lost over half of her red blood cells during the placenta removal.   She went into shock because of this blood loss, and not one of the doctors or staff realized that Michelle had gone into shock.

22. Michelle went into a coma at approximately 5:08 a.m. and never recovered. It was only then that the staff moved Michelle into CCU and administered blood transfusions. Michelle remained unconscious on February 24, 25, 26 and 27, 2006. The respirator was removed and Michelle died on February 27, 2006.

23. Michelle died on February 27, 2006 leaving her newborn son, William Knightley Walley without a mother. She left behind her parents, Edward M. McCall, II and Margarita F. McCall.

## COUNT I
## NEGLIGENCE OF UNITED STATES GOVERNMENT

24. Plaintiff herein realleges and readopts paragraphs 1 through 23 and further alleges:

25. The United States Government, by and through its agents, apparent agents, employees, servants, representatives, and contractors, were under a duty to exercise such skill, care, and diligence that is recognized as acceptable and appropriate by reasonable and prudent similar health care providers.

26. Defendant, **United States Government**, breached this standard of care and was negligent, in various ways including, but not limited to, one or more of the following negligent acts:

a.    By negligently and carelessly failing to provide proper
      care to Michelle in that these health care providers did not
      meet the level of care, skill and treatment that is
      recognized as acceptable and appropriate by reasonably
      prudent similar health care providers;

b.    By negligently and carelessly failing to possess the
      requisite knowledge appropriate to practice obstetrics;

c.    By negligently and carelessly failing to possess the
      requisite knowledge regarding appropriate measures to
      take in connection with Michelle's care;

d.    By negligently and carelessly failing to perform
      appropriate physical examinations or diagnostic tests, or
      to order that such examinations or tests be performed;

e.    By negligently and carelessly failing to take appropriate
      action in the removal of Michelle's placenta when it was
      medically inappropriate to fail to take action and at a time
      when it jeopardized the health, safety and life of Michelle;

f.    By negligently and carelessly failing to realize the amount
      of blood loss, or the significance of the blood loss suffered
      by Michelle, until it was too late.  Michelle lost so much

blood, she needed an immediate transfusion   and  she  did  not receive one;

g.     By negligently and carelessly failing to note the import of Michelle's abnormal vital signs, and failing to do anything about them;

h.     By negligently and carelessly failing to determine that Michelle had gone into shock;

i.     By negligently and carelessly failing to follow appropriate guidelines concerning care and supervision of a pregnant woman in labor;

j.     By negligently and carelessly failing to prescribe, order and/or perform indicated diagnostic procedures that would have revealed Michelle's condition and dictated a different course of care and treatment for Michelle;

k.     By  negligently  and  carelessly  failing  to  request consultation with appropriate medical specialists who would have prescribed, ordered, and/or performed procedures to prevent significant blood loss, to prevent and/or recognize and treat shock and to prevent Michelle's cardiac arrest;

l.     By negligently and carelessly failing to invoke the chain of command to secure appropriate, safe, and reasonable medical care for Michelle so as to prevent significant blood loss, shock and cardiac arrest leading to Michelle's death.

27.    This (these) negligent act(s) and omission(s) was (were) the legal cause of the death of Michelle Evette McCall.

28.    As a result of the United States Government's negligence;

a.     Michelle Evette McCall, decedent, received bodily injury, and pain and suffering that resulted in her death;

b.     WILLIAM KNIGHTLEY WALLEY, a minor, by and through his natural father and next friend, JASON WALLEY, claims the loss of his mother, mental anguish, loss of services, companionship, comfort and society and attentions of his mother; and monetary damages for the loss of income of his mother. These losses are permanent and continuing in nature and Plaintiff William Knightley Walley will continue to suffer these losses in the future.

c.     EDWARD M. McCALL, II, as parent of Michelle Evette

McCall, claims: loss of future support and services;

mental pain and suffering from the date of the injury and

medical and funeral expenses paid by him.  These losses

are permanent and continuing in nature and Edward

McCall will continue to suffer these losses in the future;

d.     MARGARITA McCALL, as parent of Michelle Evette

McCall, claims: loss of future support and services;

mental pain and suffering from the date of the injury and

medical and funeral expenses paid by her.  These losses

are permanent and continuing in nature and Margarita

McCall will continue to suffer these losses in the future;

e.     The estate of decedent Michelle Evette McCall, Plaintiffs,

EDWARD M. McCALL, II,     MARGARITA  F.  McCALL,

and JASON WALLEY, co-personal representatives,

claims: medical and funeral expenses paid by the estate.

## COUNT II
## CONSORTIUM CLAIM OF WILLIAM KNIGHTLEY WALLEY, A MINOR

29.    Plaintiff herein realleges and readopts paragraphs 1 through 28

and further alleges:

30.    As a direct and proximate result of Defendant's acts or

omissions, and the resulting death of his mother, William

Knightley Walley has in the past suffered and will in the future

continue to suffer mental anguish and the loss of services,

companionship, comfort, society and attentions of his

mother. These losses are permanent and continuing in nature

and William Knightley Walley will continue to suffer these

losses in the future.

**WHEREFORE,** it is respectfully prayed that judgment be entered in

favor of beneficiary, William Knightley Walley, plus costs, interest, and

attorney's fees.

## COUNT III
## CONSORTIUM CLAIM OF EDWARD M. McCALL, II

31. Plaintiff herein realleges and readopts paragraphs 1 through 28
    and further alleges:

32. As a direct and proximate result of Defendant's acts or
    omissions, and the resulting death of his daughter, Edward M.
    McCall, II, has in the past suffered and will in the future
    continue to suffer mental anguish and the loss of services,
    companionship, comfort, society and attentions of his
    daughter. These losses are permanent and continuing in

nature and he will continue to suffer these losses in the future.

**WHEREFORE,** it is respectfully prayed that judgment be entered in favor of beneficiary Edward M. McCall, II, plus costs, interest, and attorney's fees.

## COUNT IV
## CONSORTIUM CLAIM OF MARGARITA F. McCALL

33.     Plaintiff herein realleges and readopts paragraphs 1 through 28 and further alleges:

34.     As a direct and proximate result of Defendant's acts or omissions, and the resulting death of her daughter, Margarita McCall, has in the past suffered and will in the future continue to suffer mental anguish and the loss of services, companionship, comfort, society and attentions of her daughter. These losses are permanent and continuing in nature and she will continue to suffer these losses in the future.

**WHEREFORE,** it is respectfully prayed that judgment be entered in favor of beneficiary Margarita F. McCall, plus costs, interests, and attorney's fees.

**WHEREFORE**, Plaintiff demands judgment for damages, costs,

attorneys fees, and a trial of all issues so triable.

By:

**Stephen S. Poche**
Florida Bar No. 0157655
1270 N. Eglin Parkway
Suite C-14
Shalimar, FL 32579
Tel. (850)651-4466
Fax. (850)651-3499

and

**Henry T. Courtney**
Florida Bar No. 096516
**Sara Courtney-Baigorri**
Florida Bar no. 0018694
**COURTNEY LAW FIRM**
The Merrick Plaza
2199 Ponce de Leon Blvd.
Suite 301
Coral Gables, FL 33134
Tel. (305)358-1057
Fax (305)444-1622

| CLAIM FOR DAMAGE, INJURY, OR DEATH | INSTRUCTIONS: Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency:<br><br>Department of the Air Force | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, Street, City, State and Zip Code)<br><br>William Knightley Walley, minor, by and through his father and next friend, Jason Walley |
|---|---|

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY ☒CIVILIAN | 4. DATE OF BIRTH<br>November 10, 1985 | 5. MARITAL STATUS<br>Single | 6. DATE AND DAY OF ACCIDENT<br>February 23, 2006 | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

This is a medical malpractice claim which occurred during the care and treatment of Michelle McCall at Eglin Air Force Base, Florida and Fort Walton Beach Medical Center between February 16, 2006 through February 27, 2006.

Michelle McCall was pregnant in 2005-2006 and was an Air Force dependent. She received all of her pre-natal care at Eglin Air Force Base. At the direction of Air Force personnel on February 21, 2006, she presented herself for delivery at Fort Walton Beach Medical Center. The Ob/GYN facility at Eglin Air Force base was undergoing renovation at the time and the Air Force was renting OB/GYN facilities at Fort Walton Beach Medical Center. The Air Force staffed the OB/GYN facility at Fort Walton Beach Medical Center. (See attached separate sheet for further details.)

| 9. | PROPERTY DAMAGE |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See Instructions on reverse side.)

| 10. | PERSONAL INJURY/WRONGFUL DEATH |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

The cause of death of Michelle Evette McCall was the negligent medical treatment by the Air Force personnel at Eglin Air Force Base and Fort Walton Beach Medical Center. William was born without injury on February 23, 2006, but Michelle fell into a coma and died on February 27, 2006 due to this negligence.

| 11. | WITNESSES | |
|---|---|---|
| NAME | ADDRESS (Number, Street, City, State, and Zip Code) | |
| Jason Walley | 118 Bermuda Way, Niceville, FL 32578 | |
| Edward M. McCall II and Margarita F. McCall<br>Richard and Emma Walley | 380 Jasmine Avenue, Valparaiso, FL 32580<br>118 Bermuda Way, Niceville, FL 32578 | |

| 12. (See instructions on reverse.) | | AMOUNT OF CLAIM (in | | | |
|---|---|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. | EATH | 12d. TOTAL (Failure to spe... forfeiture of your rig... | e |
| None | None | | $25,000,000.00 | $25... | |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES A... USED BY THE INCIDENT ABOVE AND AGREE TO... D AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.)<br>*[signature]* | 13b. Phone number of person signing form<br>(850) 897-4135 | ATE OF SIGNATURE<br>4/20/07 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.) | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

| 95-109 | NSN 7540-00-634-4046 | STANDARD FORM 95<br>PRESCRIBED BY DEPT. OF JUSTICE<br>28 CFR 14.2 |
|---|---|---|

Composite ATTACHMENT #

| INSURANCE COVERAGE |
|---|

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance? ☐ Yes  If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.  ☐ No

16. Have you filed a claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?  ☐ Yes  ☐ No  | 17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim? (it is necessary that you ascertain these facts.)

19. Do you carry public liability and property damage insurance? ☐ Yes  If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).  ☐ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item #12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

*(a)* In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

*(b)* In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

*(c)* In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

*(d)* **Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.**

## PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
A. *Authority:* The requested information is solicited pursuant to one or more of the following: 5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B. *Principal Purpose:* The information requested is to be used in evaluating claims.
C. *Routine Use:* See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D. *Effect of Failure to Respond:* Disclosure is voluntary. However, failure to supply the requested information or to execute the form may render your claim "invalid".

## PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501. Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, D.C. 20530 or to the Office of Management and Budget. Do not mail completed form(s) to these addresses.

SF 95     BACK

SF Form 95 Claim for Damage, Injury or Death
Page 2
The Estate of Michelle Evette McCall, deceased, by co-personal
representatives, Jason Walley, Edward M. McCall, II and Margarita F. McCall v.
The Department of the Air Force

8. (continued)  On Thursday, February 16, 2006, Michelle Evette McCall (hereinafter "Michelle") went to the Eglin Air Force base clinic for a normal pre-natal check-up.  Her blood pressure was high and she had a 6 pound weight gain from her previous visit.  She was told to collect urine samples at home but not to bring them into the Eglin lab until Tuesday February 21, 2006 because Monday, February 20th was a federal holiday and the lab work would not get done until Tuesday, February 21, 2006.

On February 21, 2006, Michelle took the urine sample to the lab at Eglin.  She was called later that afternoon by Air Force doctor Marvin H. Sineath, Jr., and told that she had pre-eclampsia and had to report to Fort Walton Beach Medical Center to be admitted for inducing the delivery of her baby.  At that time, the labor and delivery department at Eglin was closed due to construction.  Eglin Air Force was therefore using a portion of the Fort Walton Beach Medical Center for its labor and delivery department.

Michelle entered Fort Walton Beach Medical Center on February 21, 2006 at approximately 5:00 p.m.  She was given Pitocin to induce labor. She labored through February 22, 2006.  At approximately 10:00 a.m. on February 22, 2006 a mid-wife broke Michelle's water.  At approximately noon on February 22nd, Michelle had a lot of back pain and asked for an epidural.  At approximately 4:00 p.m. on February 22nd, the doctors decided to take her off Pitocin and do a C-section.  At around that same time, she was shaved and prepared for the C-section.  The doctors were concerned about Michelle's severe pre-eclampsia. However, the family was told at approximately 6:00 p.m. that the doctor who was going to do the C-section was out at the base doing another procedure and that he would be coming soon to Ft. Walton Beach Hospital which is about 10 miles away.  It is believed that this doctor was Dr. Archbold who was consulted to do the C-section.  Dr. Crownover was also consulted on Michelle's progress and pre-eclampsia.  The doctor did not come for a long time and they put Michelle back on Pitocin while they were waiting for the doctor.  The hospital staff then told the family that they decided to wait for a natural birth.  Late at night on the 22nd, morphine was administered to Michelle.  A C-section was never done.

Michelle delivered her son at 1:25 a.m. on February 23, by natural birth attended by Dr. Sineath. The baby weighed 8 lb., 13 oz. and was 21 inches long.

The staff was unable to remove the placenta for 1 hour and 25 minutes. This is far longer than the usual 2-12 minutes after most deliveries. Dr. Crownover and Dr. Sineath both attempted to remove the placenta manually, but were unable to remove the placenta. The staff was either impatient or rushing the initial removal and tore the placenta in their efforts to remove it. Michelle lost copious amounts of blood during this time. The staff was negligent in the removal of her placenta. The staff did not move her to the operating room for care during this time nor consult with available Ft. Walton Beach Hospital staff. Dr. Archbold then arrived and removed the placenta after 1 hour and 25 minutes and copious amounts of blood loss. While Michelle had significant blood loss, the doctors did not realize the amount of blood loss, or the significance, until it was too late. Michelle lost so much blood, she needed an immediate transfusion.

Michelle lost over half of her red blood cells during the placenta removal. She went into shock because of this blood loss, and not one of the doctors or staff realized that Michelle had gone into shock. The vital signs and evidence of blood loss should have alerted the doctors to her going into shock. The abnormal vital signs were noted and documented in the chart, but their import was not appreciated and the urgency to transfuse was misjudged leading to her cardiac arrest. This was not realized until Michelle went into cardiac arrest. All of this was medical negligence that fell below the standard of care.

Michelle went into a coma at approximately 5:08 a.m. and never recovered. It was only then that the staff moved Michelle into CCU and administered blood transfusions. Michelle remained unconscious on February 24, 25, 26 and 27, 2006. The respirator was removed and Michelle died on February 27, 2006.

Michelle died on February 27, 2006 leaving her newborn son, William Knightley Walley without a mother. She left behind her parents, Edward M. McCall, II and Margarita F. McCall.

Michelle's care was managed negligently by the doctors and staff. They negligently failed to perform a C-section on Michelle in a timely manner. That alone would have saved her life. They negligently handled the excision of the placenta. They negligently failed to give her a blood transfusion. The additional fatal errors were in not checking Michelle's blood count while

attempting to remove the pacenta and in not giving her blood at that time.  A blood count any time between 2:00 a.m. and 4:00 a.m. would have documented significant blood loss.  This young, healthy mother had a major hemorrhage over a three hour period leading to her cardiac arrest and death while in the hospital with intravenous lines in place under the care of obstetricians, family practitioners and anesthesiologists.  This oversight does not meet the standard of care.  This was gross malpractice which resulted in the needless death of a beautiful young mother and daughter.

| **CLAIM FOR DAMAGE, INJURY, OR DEATH** | **INSTRUCTIONS:** Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency:<br><br>Department of the Air Force | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, Street, City, State and Zip Code)<br>The Estate of Michelle Evette McCall, deceased, by co-personal representatives, Jason Walley, Edward M. McCall, II and Margarita F. McCall. |
|---|---|

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY ☒ CIVILIAN | 4. DATE OF BIRTH<br>November 10, 1985 | 5. MARITAL STATUS<br>Single | 6. DATE AND DAY OF ACCIDENT<br>February 23, 2006 | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

This is a medical malpractice claim which occurred during the care and treatment of Michelle McCall at Eglin Air Force Base, Florida and Fort Walton Beach Medical Center between February 16, 2006 through February 27, 2006.

Michelle McCall was pregnant in 2005-2006 and was an Air Force dependent. She received all of her pre-natal medical care at Eglin Air Force Base. (See attached separate sheet for further details.)

| 9. | **PROPERTY DAMAGE** |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).

N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See Instructions on reverse side.)
N/A

| 10. | **PERSONAL INJURY/WRONGFUL DEATH** |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

The cause of death of Michelle Evette McCall was the negligent medical treatment by the Air Force personnel at Eglin Air Force Base and Fort Walton Beach Medical Center. William was born without injury on February 23, 2006, but Michelle fell into a coma and died on February 27, 2006 due to this negligence.

| 11. | **WITNESSES** | |
|---|---|---|
| **NAME** | **ADDRESS (Number, Street, City, State, and Zip Code)** | |
| Jason Walley | 118 Bermuda Way, Niceville, FL 32578 | |
| Edward M. McCall, II and Margarita F. McCall<br>Richard and Emma Walley | 380 Jasmine Avenue, Valparaiso, FL 32580<br>118 Bermuda Way, Niceville, FL 32578 | |

| 12. (See instructions on reverse.) | | **AMOUNT OF CLAIM (in dollars)** | | |
|---|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) | |
| None | None | $10,000,000.00 | $10,000,000.00 | |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) | 13b. Phone number of person signing form<br>(850) 897-1135 | 14. DATE OF SIGNATURE<br>4/24/07 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM<br>The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.) | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS<br>Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |
|---|---|

| INSURANCE COVERAGE |
|---|

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance?  ☐ Yes    If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.    ☐ No

16. Have you filed a claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?    ☐ Yes    ☐ No    17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim?  (It is necessary that you ascertain these facts.)

19. Do you carry public liability and property damage insurance?  ☐ Yes    If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).    ☐ No

| INSTRUCTIONS |
|---|

Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident.  If the incident involves more than one claimant, each claimant should submit a separate claim form.

**Complete all items - Insert the word NONE where applicable.**

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid.  A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted.  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14.  Many agencies have published supplementing regulations.  If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant.  A claim presented by an agent or legal representative must be presented in the name of the claimant.  If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item #12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT.  THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a)  In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b)  In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c)  In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d)  Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

| PRIVACY ACT NOTICE |
|---|

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
   A.  *Authority:*  The requested information is solicited pursuant to one or more of the following:  5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B.  *Principal Purpose:*  The information requested is to be used in evaluating claims.
C.  *Routine Use:*  See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D.  *Effect of Failure to Respond:*  Disclosure is voluntary.  However, failure to supply the requested information or to execute the form may render your claim "invalid".

| PAPERWORK REDUCTION ACT NOTICE |
|---|

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501.  Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, D.C.  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

SF 95    BACK

## SF Form 95 Claim for Damage, Injury or Death
## Page 2
The Estate of Michelle Evette McCall, deceased, by co-personal representatives, Jason Walley, Edward M. McCall, II and Margarita F. McCall v. The Department of the Air Force

8. (continued) On Thursday, February 16, 2006, Michelle Evette McCall (hereinafter "Michelle") went to the Eglin Air Force base clinic for a normal pre-natal check-up. Her blood pressure was high and she had a 6 pound weight gain from her previous visit. She was told to collect urine samples at home but not to bring them into the Eglin lab until Tuesday February 21, 2006 because Monday, February 20th was a federal holiday and the lab work would not get done until Tuesday, February 21, 2006.

On February 21, 2006, Michelle took the urine sample to the lab at Eglin. She was called later that afternoon by Air Force doctor Marvin H. Sineath, Jr., and told that she had pre-eclampsia and had to report to Fort Walton Beach Medical Center to be admitted for inducing the delivery of her baby. At that time, the labor and delivery department at Eglin was closed due to construction. Eglin Air Force was therefore using a portion of the Fort Walton Beach Medical Center for its labor and delivery department.

Michelle entered Fort Walton Beach Medical Center on February 21, 2006 at approximately 5:00 p.m. She was given Pitocin to induce labor. She labored through February 22, 2006. At approximately 10:00 a.m. on February 22, 2006 a mid-wife broke Michelle's water. At approximately noon on February 22nd, Michelle had a lot of back pain and asked for an epidural. At approximately 4:00 p.m. on February 22nd, the doctors decided to take her off Pitocin and do a C-section. At around that same time, she was shaved and prepared for the C-section. The doctors were concerned about Michelle's severe pre-eclampsia. However, the family was told at approximately 6:00 p.m. that the doctor who was going to do the C-section was out at the base doing another procedure and that he would be coming soon to Ft. Walton Beach Hospital which is about 10 miles away. It is believed that this doctor was Dr. Archbold who was consulted to do the C-section. Dr. Crownover was also consulted on Michelle's progress and pre-eclampsia. The doctor did not come for a long time and they put Michelle back on Pitocin while they were waiting for the doctor. The hospital staff then told the family that they decided to wait for a natural birth. Late at night on the 22nd, morphine was administered to Michelle. A C-section was never done.

Michelle delivered her son at 1:25 a.m. on February 23, by natural birth attended by Dr. Sineath. The baby weighed 8 lb., 13 oz. and was 21 inches long.

The staff was unable to remove the placenta for 1 hour and 25 minutes. This is far longer than the usual 2-12 minutes after most deliveries. Dr. Crownover and Dr. Sineath both attempted to remove the placenta manually, but were unable to remove the placenta. The staff was either impatient or rushing the initial removal and tore the placenta in their efforts to remove it. Michelle lost copious amounts of blood during this time. The staff was negligent in the removal of her placenta. The staff did not move her to the operating room for care during this time nor consult with available Ft. Walton Beach Hospital staff. Dr. Archbold then arrived and removed the placenta after 1 hour and 25 minutes and copious amounts of blood loss. While Michelle had significant blood loss, the doctors did not realize the amount of blood loss, or the significance, until it was too late. Michelle lost so much blood, she needed an immediate transfusion.

Michelle lost over half of her red blood cells during the placenta removal. She went into shock because of this blood loss, and not one of the doctors or staff realized that Michelle had gone into shock. The vital signs and evidence of blood loss should have alerted the doctors to her going into shock. The abnormal vital signs were noted and documented in the chart, but their import was not appreciated and the urgency to transfuse was misjudged leading to her cardiac arrest. This was not realized until Michelle went into cardiac arrest. All of this was medical negligence that fell below the standard of care.

Michelle went into a coma at approximately 5:08 a.m. and never recovered. It was only then that the staff moved Michelle into CCU and administered blood transfusions. Michelle remained unconscious on February 24, 25, 26 and 27, 2006. The respirator was removed and Michelle died on February 27, 2006.

Michelle died on February 27, 2006 leaving her newborn son, William Knightley Walley without a mother. She left behind her parents, Edward M. McCall, II and Margarita F. McCall.

Michelle's care was managed negligently by the doctors and staff. They negligently failed to perform a C-section on Michelle in a timely manner. That alone would have saved her life. They negligently handled the excision of the placenta. They negligently failed to give her a blood transfusion. The additional fatal errors were in not checking Michelle's blood count while

attempting to remove the pacenta and in not giving her blood at that time. A blood count any time between 2:00 a.m. and 4:00 a.m. would have documented significant blood loss. This young, healthy mother had a major hemorrhage over a three hour period leading to her cardiac arrest and death while in the hospital with intravenous lines in place under the care of obstetricians, family practitioners and anesthesiologists. This oversight does not meet the standard of care. This was gross malpractice which resulted in the needless death of a beautiful young mother and daughter.

| **CLAIM FOR DAMAGE, INJURY, OR DEATH** | **INSTRUCTIONS:** Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | | **FORM APPROVED OMB NO. 1105-0008** |
|---|---|---|---|

| 1. Submit To Appropriate Federal Agency:<br><br>Department of the Air Force | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, Street, City, State and Zip Code)<br><br>Edward M. McCall, II, father of Michelle Evette McCall, deceased minor |
|---|---|

| 3. TYPE OF EMPLOYMENT<br>☐ MILITARY ☒CIVILIAN | 4. DATE OF BIRTH<br>November 10, 1985 | 5. MARITAL STATUS<br>Single | 6. DATE AND DAY OF ACCIDENT<br>February 23, 2006 | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

This is a medical malpractice claim which occurred during the care and treatment of Michelle McCall at Eglin Air Force Base, Florida and Fort Walton Beach Medical Center between February 16, 2006 through February 27, 2006.
Michelle McCall was pregnant in 2005-2006 and was an Air Force dependent. She received all of her pre-natal medical care at Eglin Air Force Base. (See attached separate sheet for further details.)

| 9. | **PROPERTY DAMAGE** |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).
N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED.
(See Instructions on reverse side.)
N/A

| 10. | **PERSONAL INJURY/WRONGFUL DEATH** |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.
The cause of death of Michelle Evette McCall was the negligent medical treatment by the Air Force personnel at Eglin Air Force Base and Fort Walton Beach Medical Center. William was born without injury on February 23, 2006, but Michelle fell into a coma and died on February 27, 2006 due to this negligence.

| 11. | **WITNESSES** | |
|---|---|---|
| **NAME** | | **ADDRESS** (Number, Street, City, State, and Zip Code) |
| Jason Walley | | 118 Bermuda Way, Niceville, FL 32578 |
| Edward M. McCall, II and Margarita F. McCall | | 380 Jasmine Avenue, Valparaiso, FL 32580 |
| Richard and Emma Walley | | 118 Bermuda Way, Niceville, FL 32578 |

| 12. (See instructions on reverse.) | **AMOUNT OF CLAIM** (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE<br><br>None | 12b. PERSONAL INJURY<br><br>None | 12c. WRONGFUL DEATH<br><br>$10,000,000.00 | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.)<br><br>$10,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.)<br>Edward M. McCall | 13b. Phone number of person signing form<br>850-729-8751 | 14. DATE OF SIGNATURE<br>April 30, 200 |
|---|---|---|
| **CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM** | **CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS** | |
| The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.) | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) | |

| INSURANCE COVERAGE |
|---|

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance?  ☐ Yes    If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.      ☐ No

16. Have you filed a claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?      ☐ Yes      ☐ No      17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim?  (It is necessary that you ascertain these facts.)

19. Do you carry public liability and property damage insurance?  ☐ Yes    If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).      ☐ No

## INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. If the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted. Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations. If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant. A claim presented by an agent or legal representative must be presented in the name of the claimant. If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item #12 of this form.

The amount claimed should be substantiated by competent evidence as follows:

(a) In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b) In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c) In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident. Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d) Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

| PRIVACY ACT NOTICE |
|---|

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A. *Authority:*  The requested information is solicited pursuant to one or more of the following:  5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.
  B. *Principal Purpose:*  The information requested is to be used in evaluating claims.
  C. *Routine Use:*  See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
  D. *Effect of Failure to Respond:*  Disclosure is voluntary.  However, failure to supply the requested information or to execute the form may render your claim "invalid".

| PAPERWORK REDUCTION ACT NOTICE |
|---|

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501.  Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.  Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, D.C.  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

SF 95    BACK

## SF Form 95 Claim for Damage, Injury or Death
Page 2
The Estate of Michelle Evette McCall, deceased, by co-personal representatives, Jason Walley, Edward M. McCall, II and Margarita F. McCall v. The Department of the Air Force

8. (continued) On Thursday, February 16, 2006, Michelle Evette McCall (hereinafter "Michelle") went to the Eglin Air Force base clinic for a normal pre-natal check-up. Her blood pressure was high and she had a 6 pound weight gain from her previous visit. She was told to collect urine samples at home but not to bring them into the Eglin lab until Tuesday February 21, 2006 because Monday, February 20th was a federal holiday and the lab work would not get done until Tuesday, February 21, 2006.

On February 21, 2006, Michelle took the urine sample to the lab at Eglin. She was called later that afternoon by Air Force doctor Marvin H. Sineath, Jr., and told that she had pre-eclampsia and had to report to Fort Walton Beach Medical Center to be admitted for inducing the delivery of her baby. At that time, the labor and delivery department at Eglin was closed due to construction. Eglin Air Force was therefore using a portion of the Fort Walton Beach Medical Center for its labor and delivery department.

Michelle entered Fort Walton Beach Medical Center on February 21, 2006 at approximately 5:00 p.m. She was given Pitocin to induce labor. She labored through February 22, 2006. At approximately 10:00 a.m. on February 22, 2006 a mid-wife broke Michelle's water. At approximately noon on February 22nd, Michelle had a lot of back pain and asked for an epidural. At approximately 4:00 p.m. on February 22nd, the doctors decided to take her off Pitocin and do a C-section. At around that same time, she was shaved and prepared for the C-section. The doctors were concerned about Michelle's severe pre-eclampsia. However, the family was told at approximately 6:00 p.m. that the doctor who was going to do the C-section was out at the base doing another procedure and that he would be coming soon to Ft. Walton Beach Hospital which is about 10 miles away. It is believed that this doctor was Dr. Archbold who was consulted to do the C-section. Dr. Crownover was also consulted on Michelle's progress and pre-eclampsia. The doctor did not come for a long time and they put Michelle back on Pitocin while they were waiting for the doctor. The hospital staff then told the family that they decided to wait for a natural birth. Late at night on the 22nd, morphine was administered to Michelle. A C-section was never done.

Michelle delivered her son at 1:25 a.m. on February 23, by natural birth attended by Dr. Sineath. The baby weighed 8 lb., 13 oz. and was 21 inches long.

The staff was unable to remove the placenta for 1 hour and 25 minutes. This is far longer than the usual 2-12 minutes after most deliveries. Dr. Crownover and Dr. Sineath both attempted to remove the placenta manually, but were unable to remove the placenta. The staff was either impatient or rushing the initial removal and tore the placenta in their efforts to remove it. Michelle lost copious amounts of blood during this time. The staff was negligent in the removal of her placenta. The staff did not move her to the operating room for care during this time nor consult with available Ft. Walton Beach Hospital staff. Dr. Archbold then arrived and removed the placenta after 1 hour and 25 minutes and copious amounts of blood loss. While Michelle had significant blood loss, the doctors did not realize the amount of blood loss, or the significance, until it was too late. Michelle lost so much blood, she needed an immediate transfusion.

Michelle lost over half of her red blood cells during the placenta removal. She went into shock because of this blood loss, and not one of the doctors or staff realized that Michelle had gone into shock. The vital signs and evidence of blood loss should have alerted the doctors to her going into shock. The abnormal vital signs were noted and documented in the chart, but their import was not appreciated and the urgency to transfuse was misjudged leading to her cardiac arrest. This was not realized until Michelle went into cardiac arrest. All of this was medical negligence that fell below the standard of care.

Michelle went into a coma at approximately 5:08 a.m. and never recovered. It was only then that the staff moved Michelle into CCU and administered blood transfusions. Michelle remained unconscious on February 24, 25, 26 and 27, 2006. The respirator was removed and Michelle died on February 27, 2006.

Michelle died on February 27, 2006 leaving her newborn son, William Knightley Walley without a mother. She left behind her parents, Edward M. McCall, II and Margarita F. McCall.

Michelle's care was managed negligently by the doctors and staff. They negligently failed to perform a C-section on Michelle in a timely manner. That alone would have saved her life. They negligently handled the excision of the placenta. They negligently failed to give her a blood transfusion. The additional fatal errors were in not checking Michelle's blood count while

attempting to remove the pacenta and in not giving her blood at that time.  A blood count any time between 2:00 a.m. and 4:00 a.m. would have documented significant blood loss.  This young, healthy mother had a major hemorrhage over a three hour period leading to her cardiac arrest and death while in the hospital with intravenous lines in place under the care of obstetricians, family practitioners and anesthesiologists.  This oversight does not meet the standard of care.  This was gross malpractice which resulted in the needless death of a beautiful young mother and daughter.

| **CLAIM FOR DAMAGE, INJURY, OR DEATH** | **INSTRUCTIONS:** Please read carefully the instructions on the reverse side and supply information requested on both sides of this form. Use additional sheet(s) if necessary. See reverse side for additional instructions. | FORM APPROVED OMB NO. 1105-0008 |
|---|---|---|

| 1. Submit To Appropriate Federal Agency: Department of the Air Force | 2. Name, Address of claimant and claimant's personal representative, if any. (See instructions on reverse.) (Number, Street, City, State and Zip Code) Margarita F. McCall, II, mother of Michelle Evette McCall, deceased minor |
|---|---|

| 3. TYPE OF EMPLOYMENT ☐ MILITARY ☒ CIVILIAN | 4. DATE OF BIRTH November 10, 1985 | 5. MARITAL STATUS Single | 6. DATE AND DAY OF ACCIDENT February 23, 2006 | 7. TIME (A.M. OR P.M.) |
|---|---|---|---|---|

8. Basis of Claim (State in detail the known facts and circumstances attending the damage, injury, or death, identifying persons and property involved, the place of occurrence and the cause thereof. Use additional pages if necessary.)

This is a medical malpractice claim which occurred during the care and treatment of Michelle McCall at Eglin Air Force Base, Florida and Fort Walton Beach Medical Center between February 16, 2006 through February 27, 2006.

Michelle McCall was pregnant in 2005-2006 and was an Air Force dependent. She received all of her pre-natal medical care at Eglin Air Force Base. (See attached separate sheet for further details.)

| 9. | **PROPERTY DAMAGE** |
|---|---|

NAME AND ADDRESS OF OWNER, IF OTHER THAN CLAIMANT (Number, Street, City, State, and Zip Code).
N/A

BRIEFLY DESCRIBE THE PROPERTY, NATURE AND EXTENT OF DAMAGE AND THE LOCATION WHERE PROPERTY MAY BE INSPECTED. (See Instructions on reverse side.)
N/A

| 10. | **PERSONAL INJURY/WRONGFUL DEATH** |
|---|---|

STATE NATURE AND EXTENT OF EACH INJURY OR CAUSE OF DEATH, WHICH FORMS THE BASIS OF THE CLAIM. IF OTHER THAN CLAIMANT, STATE NAME OF INJURED PERSON OR DECEDENT.

The cause of death of Michelle Evette McCall was the negligent medical treatment by the Air Force personnel at Eglin Air Force Base and Fort Walton Beach Medical Center. William was born without injury on February 23, 2006, but Michelle fell into a coma and died on February 27, 2006 due to this negligence.

| 11. | **WITNESSES** |
|---|---|

| NAME | ADDRESS (Number, Street, City, State, and Zip Code) |
|---|---|
| Jason Walley | 118 Bermuda Way, Niceville, FL 32578 |
| Edward M. McCall, II and Margarita F. McCall | 380 Jasmine Avenue, Valparaiso, FL 32580 |
| Richard and Emma Walley | 118 Bermuda Way, Niceville, FL 32578 |

| 12. (See instructions on reverse.) | **AMOUNT OF CLAIM** (in dollars) | | |
|---|---|---|---|
| 12a. PROPERTY DAMAGE | 12b. PERSONAL INJURY | 12c. WRONGFUL DEATH | 12d. TOTAL (Failure to specify may cause forfeiture of your rights.) |
| None | None | $10,000,000.00 | $10,000,000.00 |

I CERTIFY THAT THE AMOUNT OF CLAIM COVERS ONLY DAMAGES AND INJURIES CAUSED BY THE INCIDENT ABOVE AND AGREE TO ACCEPT SAID AMOUNT IN FULL SATISFACTION AND FINAL SETTLEMENT OF THIS CLAIM

| 13a. SIGNATURE OF CLAIMANT (See instructions on reverse side.) *Margarita F. McCall* | 13b. Phone number of person signing form 850 - 729 - 8751 | 14. DATE OF SIGNATURE 4/30/07 |
|---|---|---|

| CIVIL PENALTY FOR PRESENTING FRAUDULENT CLAIM | CRIMINAL PENALTY FOR PRESENTING FRAUDULENT CLAIM OR MAKING FALSE STATEMENTS |
|---|---|
| The claimant is liable to the United States Government for the civil penalty of not less than $5,000 and not more than $10,000, plus 3 times the amount of damages sustained by the Government. (See 31 U.S.C. 3729.) | Fine, imprisonment, or both. (See 18 U.S.C. 287, 1001.) |

| 95-109 | NSN 7540-00-634-4046 | STANDARD FORM 95 PRESCRIBED BY DEPT. OF JUSTICE 28 CFR 14.2 |
|---|---|---|

| INSURANCE COVERAGE |
| --- |

In order that subrogation claims may be adjudicated, it is essential that the claimant provide the following information regarding the insurance coverage of his vehicle or property.

15. Do you carry accident insurance?  ☐ Yes    If yes, give name and address of insurance company (Number, Street, City, State, and Zip Code) and policy number.        ☐ No

16. Have you filed a claim on your insurance carrier in this instance, and if so, is it full coverage or deductible?    ☐ Yes    ☐ No        17. If deductible, state amount.

18. If a claim has been filed with your carrier, what action has your insurer taken or proposed to take with reference to your claim?  (It is necessary that you ascertain these facts.)

19. Do you carry public liability and property damage insurance?  ☐ Yes    If yes, give name and address of insurance carrier (Number, Street, City, State, and Zip Code).        ☐ No

---

### INSTRUCTIONS

**Claims presented under the Federal Tort Claims Act should be submitted directly to the "appropriate Federal agency" whose employee(s) was involved in the incident. if the incident involves more than one claimant, each claimant should submit a separate claim form.**

### Complete all items - Insert the word NONE where applicable.

A CLAIM SHALL BE DEEMED TO HAVE BEEN PRESENTED WHEN A FEDERAL AGENCY RECEIVES FROM A CLAIMANT, HIS DULY AUTHORIZED AGENT, OR LEGAL REPRESENTATIVE, AN EXECUTED STANDARD FORM 95 OR OTHER WRITTEN NOTIFICATION OF AN INCIDENT, ACCOMPANIED BY A CLAIM FOR MONEY

**Failure to completely execute this form or to supply the requested material within two years from the date the claim accrued may render your claim invalid. A claim is deemed presented when it is received by the appropriate agency, not when it is mailed.**

If instruction is needed in completing this form, the agency listed in item #1 on the reverse side may be contacted.  Complete regulations pertaining to claims asserted under the Federal Tort Claims Act can be found in Title 28, Code of Federal Regulations, Part 14. Many agencies have published supplementing regulations.  If more than one agency is involved, please state each agency.

The claim may be filed by a duly authorized agent or other legal representative, provided evidence satisfactory to the Government is submitted with the claim establishing express authority to act for the claimant.  A claim presented by an agent or legal representative must be presented in the name of the claimant.  If the claim is signed by the agent or legal representative, it must show the title or legal capacity of the person signing and be accompanied by evidence of his/her authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian or other representative.

If claimant intends to file for both personal injury and property damage, the amount for each must be shown in item #12 of this form.

DAMAGES IN A **SUM CERTAIN** FOR INJURY TO OR LOSS OF PROPERTY, PERSONAL INJURY, OR DEATH ALLEGED TO HAVE OCCURRED BY REASON OF THE INCIDENT. THE CLAIM MUST BE PRESENTED TO THE APPROPRIATE FEDERAL AGENCY WITHIN **TWO YEARS** AFTER THE CLAIM ACCRUES.

The amount claimed should be substantiated by competent evidence as follows:

(a)  In support of the claim for personal injury or death, the claimant should submit a written report by the attending physician, showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability, if any, the prognosis, and the period of hospitalization, or incapacitation, attaching itemized bills for medical, hospital, or burial expenses actually incurred.

(b)  In support of claims for damage to property, which has been or can be economically repaired, the claimant should submit at least two itemized signed statements or estimates by reliable, disinterested concerns, or, if payment has been made, the itemized signed receipts evidencing payment.

(c)  In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, the date of purchase, and the value of the property, both before and after the accident.  Such statements should be by disinterested competent persons, preferably reputable dealers or officials familiar with the type of property damaged, or by two or more competitive bidders, and should be certified as being just and correct.

(d)  Failure to specify a sum certain will render your claim invalid and may result in forfeiture of your rights.

---

### PRIVACY ACT NOTICE

This Notice is provided in accordance with the Privacy Act, 5 U.S.C. 552a(e)(3), and concerns the information requested in the letter to which this Notice is attached.
  A.  Authority:  The requested information is solicited pursuant to one or more of the following:  5 U.S.C. 301, 28 U.S.C. 501 et seq., 28 U.S.C. 2671 et seq., 28 C.F.R. Part 14.

B.  Principal Purpose:  The information requested is to be used in evaluating claims.
C.  Routine Use:  See the Notices of Systems of Records for the agency to whom you are submitting this form for this information.
D.  Effect of Failure to Respond:  Disclosure is voluntary.  However, failure to supply the requested information or to execute the form may render your claim "invalid".

---

### PAPERWORK REDUCTION ACT NOTICE

This notice is solely for the purpose of the Paperwork Reduction Act, 44 U.S.C. 3501.  Public reporting burden for this collection of information is estimated to average 6 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Director, Torts Branch, Attention: Paperwork Reduction Staff, Civil Division, U.S. Department of Justice, Washington, D.C.  20530 or to the Office of Management and Budget.  Do not mail completed form(s) to these addresses.

SF 95        BACK

<u>SF Form 95 Claim for Damage, Injury or Death</u>
Page 2
The Estate of Michelle Evette McCall, deceased, by co-personal
representatives, Jason Walley, Edward M. McCall, II and Margarita F. McCall v.
The Department of the Air Force

8. (continued) On Thursday, February 16, 2006, Michelle Evette McCall (hereinafter "Michelle") went to the Eglin Air Force base clinic for a normal pre-natal check-up. Her blood pressure was high and she had a 6 pound weight gain from her previous visit. She was told to collect urine samples at home but not to bring them into the Eglin lab until Tuesday February 21, 2006 because Monday, February 20th was a federal holiday and the lab work would not get done until Tuesday, February 21, 2006.

On February 21, 2006, Michelle took the urine sample to the lab at Eglin. She was called later that afternoon by Air Force doctor Marvin H. Sineath, Jr., and told that she had pre-eclampsia and had to report to Fort Walton Beach Medical Center to be admitted for inducing the delivery of her baby. At that time, the labor and delivery department at Eglin was closed due to construction. Eglin Air Force was therefore using a portion of the Fort Walton Beach Medical Center for its labor and delivery department.

Michelle entered Fort Walton Beach Medical Center on February 21, 2006 at approximately 5:00 p.m. She was given Pitocin to induce labor. She labored through February 22, 2006. At approximately 10:00 a.m. on February 22, 2006 a mid-wife broke Michelle's water. At approximately noon on February 22nd, Michelle had a lot of back pain and asked for an epidural. At approximately 4:00 p.m. on February 22nd, the doctors decided to take her off Pitocin and do a C-section. At around that same time, she was shaved and prepared for the C-section. The doctors were concerned about Michelle's severe pre-eclampsia. However, the family was told at approximately 6:00 p.m. that the doctor who was going to do the C-section was out at the base doing another procedure and that he would be coming soon to Ft. Walton Beach Hospital which is about 10 miles away. It is believed that this doctor was Dr. Archbold who was consulted to do the C-section. Dr. Crownover was also consulted on Michelle's progress and pre-eclampsia. The doctor did not come for a long time and they put Michelle back on Pitocin while they were waiting for the doctor. The hospital staff then told the family that they decided to wait for a natural birth. Late at night on the 22nd, morphine was administered to Michelle. A C-section was never done.

Michelle delivered her son at 1:25 a.m. on February 23, by natural birth attended by Dr. Sineath. The baby weighed 8 lb., 13 oz. and was 21 inches long.

The staff was unable to remove the placenta for 1 hour and 25 minutes. This is far longer than the usual 2-12 minutes after most deliveries. Dr. Crownover and Dr. Sineath both attempted to remove the placenta manually, but were unable to remove the placenta. The staff was either impatient or rushing the initial removal and tore the placenta in their efforts to remove it. Michelle lost copious amounts of blood during this time. The staff was negligent in the removal of her placenta. The staff did not move her to the operating room for care during this time nor consult with available Ft. Walton Beach Hospital staff. Dr. Archbold then arrived and removed the placenta after 1 hour and 25 minutes and copious amounts of blood loss. While Michelle had significant blood loss, the doctors did not realize the amount of blood loss, or the significance, until it was too late. Michelle lost so much blood, she needed an immediate transfusion.

Michelle lost over half of her red blood cells during the placenta removal. She went into shock because of this blood loss, and not one of the doctors or staff realized that Michelle had gone into shock. The vital signs and evidence of blood loss should have alerted the doctors to her going into shock. The abnormal vital signs were noted and documented in the chart, but their import was not appreciated and the urgency to transfuse was misjudged leading to her cardiac arrest. This was not realized until Michelle went into cardiac arrest. All of this was medical negligence that fell below the standard of care.

Michelle went into a coma at approximately 5:08 a.m. and never recovered. It was only then that the staff moved Michelle into CCU and administered blood transfusions. Michelle remained unconscious on February 24, 25, 26 and 27, 2006. The respirator was removed and Michelle died on February 27, 2006.

Michelle died on February 27, 2006 leaving her newborn son, William Knightley Walley without a mother. She left behind her parents, Edward M. McCall, II and Margarita F. McCall.

Michelle's care was managed negligently by the doctors and staff. They negligently failed to perform a C-section on Michelle in a timely manner. That alone would have saved her life. They negligently handled the excision of the placenta. They negligently failed to give her a blood transfusion. The additional fatal errors were in not checking Michelle's blood count while

attempting to remove the pacenta and in not giving her blood at that time. A blood count any time between 2:00 a.m. and 4:00 a.m. would have documented significant blood loss. This young, healthy mother had a major hemorrhage over a three hour period leading to her cardiac arrest and death while in the hospital with intravenous lines in place under the care of obstetricians, family practitioners and anesthesiologists. This oversight does not meet the standard of care. This was gross malpractice which resulted in the needless death of a beautiful young mother and daughter.



# IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT, IN AND FOR OKALOOSA COUNTY, FLORIDA

IN RE: The Paternity and Custody of

WILLIAM KNIGHTLEY WALLEY,
      a minor child.

_____/

Case No: 06-DR 1689

## FINAL JUDGMENT OF PATERNITY NUNC PRO TUNC TO MAY 25, 2006

**THIS CAUSE** having come before the Court on the Plaintiff/Father, **JASON WALLEY**

("**Father**"), Petition for Declaratory Judgment of Paternity and Custody and the Defendant/

Mother, **MICHELLE McCALL ("Mother")** being deceased, and the Court having reviewed

the record and being otherwise advised in the premises it is hereby

**ORDERED AND ADJUDGED**:

1.    **Jurisdiction**: This Court has jurisdiction over the parties and the subject matter in

this cause.

2.    **Paternity:**  The Plaintiff/Father, **JASON WALLEY**, is hereby named the

biological father of the minor child to wit: **WILLIAM KNIGHTLEY WALLEY;** date of birth:

February 23, 2006.

3.    **Custody of Child:**    The Father shall hereafter be designated as the sole parental

authority of the minor child, **WILLIAM KNIGHTLEY WALLEY**.

4.    **Birth Certificate:** The Plaintiff/Father shall immediately be named as the

biological father on the minor child's birth certificate and the minor child's surname shall be the

Page 1 of 2

Received

JUN 1 9 2006

By: Walle

ATTACHMENT # _B_

same as the Father's surname.

**DONE AND ORDERED, NUNC PRO TUNC to May 25, 2006,** in Chambers,

Okaloosa County Courthouse, Shalimar, Florida, this ___9___ day of __June_____, 2006.

_____

**G. ROBERT BARRON**
Circuit Judge

**Certified Copies To**:

Stephen S. Poche', Esquire (2)
1270 N. Eglin Parkway, Suite C-14
Shalimar, Florida  32579

Georgia Thomas, Esq.
Attorney for Maternal Grandparents
111 SE Ferry Road, Ste B
Fort Walton Beach, FL 32548

DON W. HOWARD
Clerk of the Circuit Court

By:_____
       Deputy Clerk

CERTIFIED A TRUE
AND CORRECT COPY
DON W. HOWARD
CLERK CIRCUIT COURT
BY_____
         DEPUTY CLERK
DATE___6.12.06___

Page 2 of 2

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL CIRCUIT
IN AND FOR OKALOOSA COUNTY, FLORIDA

IN RE: The Estate of

MICHELLE EVETTE MCCALL,                    CASE NO. 06- CP-00012495 S

Deceased.

_____ /

## LETTERS OF ADMINISTRATION

TO ALL WHOM IT MAY CONCERN

WHEREAS, MICHELLE EVETTE MCCALL, a resident of Okaloosa County, Florida,

died on February 27, 2006, owning assets in the State of Florida, and

WHEREAS, JASON WALLEY, EDWARD M. MCCALL, II and MARGARITA F.

MCCALL have been appointed Co-Personal Representatives of the estate of the decedent and

have performed all acts prerequisite to issuance of Letters of Administration in the estate,

NOW, THEREFORE, I, the undersigned circuit judge, declare them duly qualified under

the laws of the State of Florida to act as Co-Personal Representatives of the estate of MICHELLE

EVETTE MCCALL, deceased, with full power to administer the estate according to law; to ask,

demand, sue for, recover, and receive the property of the decedent; to pay the debts of the

decedent as far as the assets of the estate will permit and the law directs; and to make distribution

of the estate according to law.

DONE AND ORDERED in chambers at Shalimar, Okaloosa County, Florida, this 5th day

of January , 2007.

**THOMAS T. REMINGTON**

THOMAS REMINGTON, Circuit Judge

ATTACHMENT # C1

In Re: The Estate of Melvin K. Smith
Letters of Administration
Case No. 06-CP-00012495 S

## CLERK'S CERTIFICATE OF MAILING

I HEREBY CERTIFY that a true copy of the foregoing has been furnished to the following addressees this _____ day of _____, 2007.

MICHAEL A. JONES, ESQ.          SASHA L. EASTBURN, ESQ.
Post Office Box 947             1270 N. Eglin Parkway, Suite C-14
Niceville, FL 32588-0947        Shalimar, FL 32579

DON W. HOWARD, Clerk of Court

By _____
As Deputy Clerk